## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

SARA WREN and MELINDA
THOMPSON on behalf of themselves and
all others similarly situated,

    *Plaintiffs*,

v.

FRESHREALM, INC.,

    *Defendant*.

Case No.

**JURY TRIAL DEMANDED**

## PLAINTIFFS' COMPLAINT–CLASS ACTION

Plaintiffs Sara Wren and Melinda Thompson ("Plaintiffs"), individually and on behalf of all others similarly situated (the "Class," as defined below), bring this class action against FreshRealm, Inc. ("FreshRealm" or "Defendant"). Plaintiffs base these allegations on personal knowledge as to matters related to and known to them. As to all other matters, Plaintiffs base their allegations on information and belief and through investigation of their counsel. Plaintiffs believe substantial evidentiary support exists for the allegations below.

## NATURE OF THE ACTION

1.    FreshRealm is a manufacturer of fresh meals, including ready-to-cook, ready-to-heat, and meal kits, that it distributes to grocery chains and retailers for sale nationwide.

2.    Plaintiffs bring this case on behalf of themselves and all other consumers nationwide who bought Defendant's Chicken Fettucine Alfredo products produced prior to June

17, 2025 and sold at Walmart and Kroger stores (collectively herein, the "Products"). *See* Exhibit A.[1]

3.    The Products were and are unfit for distribution and/or consumption because they became contaminated with *Listeria monocytogenes*, a harmful bacterium which causes the infection listeriosis and can lead to severe symptoms including but not limited to fever, muscle aches, fatigue, confusion, seizures, and loss of balance. Individuals who are pregnant and become infected with listeriosis can suffer negative pregnancy outcomes including miscarriage and stillbirth. In the most severe cases, listeriosis can be fatal.

4.    Defendant manufactures, warrants, advertises, markets, distributes, and sells various ready-to-eat products under several brand names, including MARKETSIDE and HOME CHEF, among others. For the full list of brands and products affected, refer to Exhibit A.

5.    On June 17, 2025, Defendant announced a recall of some chicken fettuccine alfredo products due to the potential for contamination with *L. monocytogenes*, which provided information for consumers regarding which products were affected. The outbreak strain of *L. monocytogenes* was isolated from ill people on dates ranging from August 2024 – May 2025. The same outbreak strain was isolated from a routine chicken fettuccine alfredo sample collected by the U.S. Department of Agriculture's Food Safety and Inspection Service in a FreshRealm establishment in March 2025.

6.    Plaintiffs are individuals who purchased the products without notice or knowledge that the Products were worthless and/or worth less than the price they paid, and they are individuals who experienced a range of symptoms consistent with listeriosis after consuming the Products.

---

[1] Exhibit A is a true and correct copy of the Food and Drug Administration's June 18, 2025 recall announcement, available at https://www.fda.gov/food/outbreaks-foodborne-illness/outbreak-investigation-listeria-monocytogenes-chicken-fettuccine-alfredo-meals-june-2025.

7.    Listeriosis is a serious infection which, per the CDC is "intestinal" but also "invasive," indicating it begins in the intestinal system but can spread to other systems of the body. Listeriosis is particularly harmful to individuals who are pregnant, newborns, older adults, and individuals with weakened immune systems.[2]

8.    Severe infections can cause additional complications, particularly if Listeriosis spreads to the bloodstream or the brain. In such circumstances the infection can cause meningitis.[3]

9.    *L. monocytogenes* is a particularly problematic contaminant because it can reproduce to dangerous levels in low temperatures – even in refrigerators and freezers.[4]

10.    Defendant manufactures, sells, and distributes the Products to consumers, including Plaintiffs, across the United States.

11.    Defendant marketed and advertised the Products as being fit or suitable for human consumption, represented that the Products provide nutrition and/or guaranteed the Products for taste and nutrition: Defendant's marketing and advertising of the Products is false, deceptive, and misleading to reasonable consumers because the Products were contaminated with *L. monocytogenes*, and thus were not as advertised, represented, or guaranteed.

12.    Considering there exist on the market alternative products which lack contamination of *L. monocytogenes*, the contamination is avoidable.

13.    Defendant did not notify Plaintiffs or Class members of the risk of contamination through the product labels, ingredients, packaging or advertising—an omission which caused serious harm to the purchases of the Products.

---

[2]    *Symptoms of* Listeria *infection*, Centers for Disease Control and Prevention, https://www.cdc.gov/listeria/signs-symptoms/index.html (last accessed Nov. 13, 2024).
[3]    *Listeria infection*, Mayo Clinic, https://www.mayoclinic.org/diseases-conditions/listeria-infection/symptoms-causes/syc-20355269 (last accessed Nov. 13, 2024).
[4]    *Id*.

14.     Plaintiffs and Class members would not have purchased the Products had they known the products contained, or might have contained, dangerous or toxic levels of *L. monocytogenes* and/or that Defendant did not adequately test, screen, and/or inspect the Products before selling them.

15.     Accordingly, Plaintiffs bring this action and assert claims on behalf of themselves and all other similarly situated persons (defined below) for negligence, negligent misrepresentation, breach of express and implied warranties, violation of relevant state consumer protections acts, and unjust enrichment.

## JURISDICTION AND VENUE

16.     This Court has subject matter jurisdiction pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d), because the aggregate amount in controversy exceeds $5 million (exclusive of interests and costs), the number of members of the proposed Class exceeds 100, and many members of the proposed Class are citizens of different states than Defendant.

17.     This Court has personal jurisdiction over Defendant because FreshRealm is headquartered in Lancaster, Texas, located within this District.

18.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391 as this is the Judicial District where a substantial part of the events or omissions giving rise to the claim occurred.

19.     This Court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

## PARTIES

*Plaintiff Sara Wren*

20.     Plaintiff Sara Wren is a citizen of Texas and a resident of Lewisville, TX. On March 10, 2025, Ms. Wren purchased a "MARKETSIDE GRILLED CHICKEN ALFREDO WITH

FETTUCCINE Tender Pasta with Creamy Alfredo Sauce, White Meat Chicken, Broccoli and Shaved Parmesan Cheese" product that is subject to the Recalls from Walmart.

21.    Had Defendant not made the false, misleading, and deceptive representations and omissions regarding the contents of the Products, Plaintiff Wren would not have been willing to purchase the Products or pay as much as she paid for the Products. Plaintiff Wren purchased, purchased more of, and/or paid more for, the Products than she would have had she known the truth about the Products. The Products Plaintiff Wren received were worthless because they possibly contained *Listeria monocytogenes*. Alternatively, Plaintiff Wren paid a price premium based on Defendant's false, misleading, and deceptive misrepresentations and omissions. Accordingly, Plaintiff Wren was injured and lost money as a result of Defendant's improper conduct.

*Plaintiff Melinda Thompson*

22.    Plaintiff Melinda Thompson is a citizen of Kentucky and a resident of Meally, Kentucky. On June 9, 2025, Ms. Thompson purchased a "MARKETSIDE GRILLED CHICKEN ALFREDO WITH FETTUCCINE Tender Pasta with Creamy Alfredo Sauce, White Meat Chicken, Broccoli and Shaved Parmesan Cheese" product that is subject to the Recalls from Walmart.

23.    Had Defendant not made the false, misleading, and deceptive representations and omissions regarding the contents of the Products, Plaintiff Thompson would not have been willing to purchase the Products or pay as much as she paid for the Products. Plaintiff Thompson purchased, purchased more of, and/or paid more for, the Products than she would have had she known the truth about the Products. The Products Plaintiff Thompson received were worthless because they possibly contained *Listeria monocytogenes*. Alternatively, Plaintiff Thompson paid

a price premium based on Defendant's false, misleading, and deceptive misrepresentations and omissions. Accordingly, Plaintiff Thompson was injured and lost money as a result of Defendant's improper conduct.

*Defendant Fresh & Ready Foods LLC.*

24.    Defendant FreshRealm, Inc. is a for-profit corporation organized under the laws of the State of Delaware with its principal place of business located in Lancaster, Texas. Defendant manufactures, markets, and distributes fresh meals, including ready-to-cook, ready-to-heat, and meal kits, that it distributes to grocery chains and retailers for sale nationwide.

## FACTUAL ALLEGATIONS

### Food Contaminated with Listeria Monocytogenes are Dangerous for Human Consumption

25.    *Listeria monocytogenes* is a pathogenic bacterium that can cause listeriosis, an infection of the intestine that is capable of spreading to other areas of the human body. *L. monocytogenes* is able to grow at low temperatures, including temperatures maintained in freezers and refrigerators.[5]

26.    The FDA warns that "*L. monocytogenes* is generally transmitted when food is harvested, processed, prepared, packed, transported or stored in environments contaminated with *L. monocytogenes*."[6]

27.    A person who becomes infected with *L. monocytogenes* may suffer a range of symptoms that can last for weeks. "Mild symptoms may include a fever, muscle aches, nausea, vomiting, and diarrhea. If the more severe form of listeriosis develops, symptoms may include

---

[5] Angelika Gründling et al., Listeria monocytogenes *regulates flagellar motility gene expression through MogR, a transcriptional repressor required for virulence*, National Library of Medicine (Aug. 9, 2004), https://pmc.ncbi.nlm.nih.gov/articles/PMC514476/.
[6] *Listeria (Listeriosis)*, Food and Drug Administration, https://www.fda.gov/food/foodborne-pathogens/listeria-listeriosis (last accessed Nov. 13, 2024).

headache, stiff neck, confusion, loss of balance, and convulsions. For the very young, the elderly, and the immune-compromised listeriosis can result in death."[7]

28.    Listeriosis is particularly harmful for at-risk groups, such as pregnant individuals or people with compromised immune systems, and can cause miscarriage and stillbirth, as well as severe health complications, including death.[8]

29.    Humans can become ill with *L. monocytogenes* through consumption of foods contaminated with *L. monocytogenes*, and the longer the refrigerated foods are stored in the fridge, the more opportunity the pathogen has to grow. *L. monocytogenes* has been linked to many foods, including raw or undercooked poultry, sausage, hot dogs, deli meats, and raw or smoked fish.

30.    The CDC estimates that *L. monocytogenes* causes thousands of infections and hundreds of deaths each year.[9]

31.    Due to this known risk and danger of *L. monocytogenes*, manufacturers should have in place or implement quality and preventive control standards and practices to prevent sourcing of and use of ingredients with *L. monocytogenes* in frozen breakfast products.

### *The Products Contaminated with Listeria Monocytogenes*

32.    Defendant's June 17, 2025 recall included at least three brand name products that were subject to contamination with *L. monocytogenes*.

33.    To date, FreshRealm has recalled Products it produces under the brand names "Marketside" and "Home Chef."

34.    The recalled products distributed for consumption under the above brands are

---

[7] *Id.*

[8] *Id.*

[9] *About* Listeria *Infection*, Centers for Disease Control and Prevention, https://www.cdc.gov/listeria/about/index.html (last accessed Nov. 13, 2024).

unsafe for eating and can cause a wide range of symptoms due to infection.

35.    According to the FDA recall notice, as of June 18, 2025, a total of 17 cases of *L. monocytogenes* related to consuming Defendant's recalled products have been reported from 13 states: "Of 17 people with information, 16 (94%) were hospitalized and there are 3 deaths attributed to listeriosis. There is one pregnancy associated illness in a mother that resulted in a fetal loss." *See* Exhibit A.

36.    Defendant was aware of the dangers associated with *L. monocytogenes* contamination prior to the manufacture of the recalled products and should have identified any such contamination prior to placing these products in the marketplace through its own testing and analysis. However, Defendant did not identify this contamination, and as a result, did not inform Plaintiffs or Class members that its products were subject to a risk of listeria contamination, or that consumption of such products may cause listeriosis. Defendant omitted this knowledge from the packaging, labeling, marketing, and advertising of the Products, which omission induced Plaintiffs to purchase and consume the Products.

37.    No reasonable consumer would purchase products that risk causing listeriosis due to *L. monocytogenes* contamination, nor would any reasonable consumer have reason to expect the products offered on the shelves of their grocer to be contaminated and dangerous for consumption. Nothing on the Product labels or packaging, nor did the Products' marketing, or advertising information make known the Products they were purchasing included the risk of infection with listeriosis.

38.    Because Plaintiffs and Class members were deprived of such information, they were deprived of the benefit of the bargain and spent money on Products which were worthless or worth less than the price they paid. Had they been apprised of such information, Plaintiffs would

not have purchased the products and certainly would not have consumed them.

39.    Defendant had a continuous obligation to disclose the risk of listeria contamination to Plaintiffs and the Class members due to its superior knowledge concerning the Product composition, as well as the fact that contamination is an issue of safety, which Plaintiffs and Class members have no reasonable way of discovering on their own. Failure to disclose such imperative information amounts to fraudulent misrepresentation, deceptive, unfair, and misleading conduct, and unlawful conduct actionable by Plaintiffs.

40.    Defendant's Products are adulterated, worthless, unfit for sale or for human use due to the presence of bacteria within the Products and because of the recall. Plaintiffs seek to recover damages for the purchase of the Products. They further seek to recover damages for the personal injuries they suffered having consumed the contaminated Products and suffered symptoms as a result of listeriosis infection.

***Plaintiff Wren's Experience with Products***

41.    During the relevant period, Plaintiff Wren purchased at least one of the Products, including MARKETSIDE GRILLED CHICKEN ALFREDO WITH FETTUCCINE Tender Pasta with Creamy Alfredo Sauce, White Meat Chicken, Broccoli and Shaved Parmesan Cheese. Plaintiff Wren purchased the Product through the Walmart delivery app on March 10, 2025.

42.    In deciding to make her purchase of the Product, Plaintiff Wren relied on the representations on the Product's packaging regarding the Products' ingredients, benefits, and healthfulness:



*Figure 1*

43.    Nowhere on the Product packaging did Defendant disclose that the Product contained or may contain *L. monocytogenes*.

44.    Plaintiff Wren consumed the product.

45.    Had Plaintiff Wren known the Product contained or risked containing *L. monocytogenes* she would not have purchased the Product.

**Plaintiff Thompson's Experience with Product**

46.    During the relevant period, Plaintiff Thompson at least one of the Products, including MARKETSIDE GRILLED CHICKEN ALFREDO WITH FETTUCCINE Tender Pasta with Creamy Alfredo Sauce, White Meat Chicken, Broccoli and Shaved Parmesan Cheese. Plaintiff Thompson purchased the Product through the Walmart delivery app on June 9, 2025.

47.    In deciding to make her purchases of the Products, Plaintiff Thompson relied on

10

the representations on the Products' packaging regarding the Products' ingredients, benefits, and healthfulness:



*Figure 2*

48.    Nowhere on the Product packaging did Defendant disclose that the Product contained or may contain *L. monocytogenes*.

49.    Plaintiff Thompson consumed the Product.

50.    Had Plaintiff Thompson known the Product contained or risked containing *L. monocytogenes* she would not have purchased the Product.

## CLASS ACTION ALLEGATIONS

51.    Plaintiffs bring this action pursuant to Rule 23(a)(1)–(4), Rule 23(b)(1), (2), or (3), and/or Rule 23(c)(4) of the Federal Rules of Civil Procedure on behalf of the following proposed Nationwide Class and Kentucky Subclass:

**Nationwide Class:** All persons residing in the United States who purchased one or more Products subject to the June 17, 2025 recall, or any subsequent recalls.

**Kentucky Subclass:** All persons residing in the state of Kentucky who purchased one or more Products subject to the June 17, 2025 recall, or any subsequent recalls.

52.    Excluded from the Classes are Defendant, its parents, subsidiaries, affiliates, officers, and directors, any entity in which Defendant has a controlling interest, and all judges assigned to hear any aspect of this litigation, as well as their immediate family members.

53.    This action is brought and may properly be maintained as a class action under Rule 23(a)(1-4), Rule 23(b)(1), (2), or (3), and/or Rule 23(c)(4) of the Federal Rules of Civil Procedure.

**Numerosity of the Proposed Classes**
**(Fed. R. Civ. P. 23(a)(1))**

54.    The members of the Class are so numerous that their individual joinder would be impracticable. The Class comprises potentially tens-of-thousands of consumers from the sale of these products nationwide. The precise number of Class members, and their addresses, are unknown to Plaintiffs at this time, but can be ascertained from Defendant's records and/or retailer records. The members of the Class may be notified of the pendency of this action by mail or email, supplemented (if deemed necessary or appropriate by the Court) by published notice, including digital notice.

**Predominance of Common Questions of Fact and Law**
**(Fed. R. Civ. P. 23(a)(2); 23(b)(3))**

55.    Common questions of law and fact exist as to all members of the Class. These questions predominate over the questions affecting only individual members of the Class. The common legal and factual questions include, without limitation:

a. Whether Defendant knew or should have known that the Products were contaminated with *L. monocytogenes* that rendered the Products unsafe and unsuitable for human consumption;

b. Whether Defendant failed to employ quality control measures and failed to properly manufacture, test and/or inspect its Products before distribution and sale;

c. When Defendant learned or should have learned of *L. monocytogenes* contamination in its Products;

d. Whether Defendant made affirmative misrepresentations and/or false and misleading statements regarding the Products;

e. Whether Defendant failed to disclose material facts regarding the Products;

f. Whether Defendant was negligent in producing the Products;

g. Whether Defendant made negligent misrepresentations in connection with the distribution and sale of the Products;

h. Whether Defendant breached express warranties in connection with the distribution and sale of the Products;

i. Whether Defendant breached the implied warranty of merchantability in connection with the distribution and sale of the Products;

j. Whether Defendant violated the state consumer protection statutes alleged herein;

k. Whether Defendant was unjustly enriched;

l. The nature of the relief, including damages and equitable relief, to which Plaintiff and the members of the Class are entitled; and

m. Whether Defendant is liable for attorneys' fees and costs.

**Typicality of Claims**
**(Fed. R. Civ. P. 23(a)(3))**

56.     Plaintiffs' claims are typical of the claims of the Class because Plaintiffs, like all other Class members, purchased Defendant's Products, suffered damages as a result of those purchases, and seeks the same relief as the proposed Class members.

**Adequacy of Representation**
**(Fed. R. Civ. P. 23(a)(4))**

57.     Plaintiffs are adequate representatives of the Class because their interests do not

13

conflict with the interests of the members of the Class and have retained counsel competent and experienced in complex class action, including consumer litigation and food contamination litigation.

58.    Plaintiffs and their counsel will fairly and adequately protect the interest of the members of the Class.

**Superiority of a Class Action**
**(Fed. R. Civ. P. 23(b)(3))**

59.    A class action is superior to other available means for the fair and efficient adjudication of the claims of Plaintiffs and members of the Class. There is no special interest in Class members individually controlling the prosecution of separate actions. The damages suffered by individual members of the Class, while significant, are small given the burden and expense of individual prosecution of the complex and extensive litigation necessitated by Defendant's conduct. Further, it would be virtually impossible for the members of the Class individually to redress effectively the wrongs done to them. And, even if members of the Class themselves could afford such individual litigation; the court system could not, given the thousands of cases that would need to be filed. Individualized litigation would also present a potential for inconsistent or contradictory judgments. Individualized litigation would increase the delay and expense to all parties and the court system, given the complex legal and factual issues involved. By contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

**Risk of Inconsistent or Dispositive Adjudications and the Appropriateness of Final Injunctive or Declaratory Relief**
**(Fed. R. Civ. P. 23(b)(1) and (2))**

60.    In the alternative, this action may properly be maintained as a class action, because:

14

a. the prosecution of separate actions by individual members of the Class would create a risk of inconsistent or varying adjudication with respect to individual Class members, which would establish incompatible standards of conduct for Defendant; or

b. the prosecution of separate actions by individual Class members would create a risk of adjudications with respect to individual members of the Class which would, as a practical matter, be dispositive of the interests of other members of the Class not parties to the adjudications, or substantially impair or impede their ability to protect their interests; or

c. Defendant has acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive or corresponding declaratory relief with respect to the Class as a whole.

**Issue Certification**
**(Fed. R. Civ. P. 23(c)(4))**

61. In the alternative, the common questions of fact and law, set forth in Paragraph 41, are appropriate for issue certification on behalf of the proposed Class.

**FIRST CAUSE OF ACTION**
**Negligence**
**(On Behalf of Nationwide Class)**

62. Plaintiffs hereby incorporate all other paragraphs of this Complaint and restate them as if fully set forth herein.

63. Defendant owed a duty of care to Plaintiffs and the Class members. Defendant breached that duty.

64. Defendant is the manufacturer of the Products purchased by Plaintiffs and Class members.

65. Defendant had a duty to take reasonable care in the manufacture, formulation, sourcing, testing, inspection, marketing, distribution, and the sale of its Products, including identifying all affected Products and/or to promptly recall and remove all of the affected Products from the marketplace, including taking all appropriate remedial action.

15

66.     By the actions and omissions alleged herein, Defendant breached its duty. Among other things, Defendant manufactured products contaminated with dangerous levels of *L. monocytogenes* that rendered its Products unsafe and unsuitable for human consumption.

67.     As a result of Defendant's breaches and violations, Plaintiffs and Class members suffered harm.

68.     Defendant's negligence was a substantial factor in the harm caused to Plaintiffs and Class members.

69.     At all relevant times, Plaintiffs and members of the Class acted lawfully and with due care and did not contribute to their own injuries.

70.     Accordingly, Plaintiffs and members of the Class are entitled to damages and other appropriate relief, as prayed for hereunder.

### SECOND CAUSE OF ACTION
### Negligent Misrepresentation
### (On Behalf of Nationwide Class)

71.     Plaintiffs hereby incorporate all other paragraphs of this Complaint and restate them as if fully set forth herein.

72.     Defendant's actions and omissions alleged herein constitute negligent misrepresentation.

73.     Defendant misrepresented material facts concerning the safety, suitability, and quality of its Products, including that the Products were nutritious, healthful, and suitable for human consumption.

74.     Defendant has no reasonable grounds for believing that its misrepresentations were true. Among other things, Defendant represented that the Products were of high quality, healthy, safe, and suitable for human consumption. Defendant knew or should have known but failed to

disclose that, contrary to its representations, the Products were contaminated with *L. monocytogenes* and were not fit for human consumption.

75.    Defendant made such misrepresentations with the intent to induce Plaintiffs and Class members to rely on its misrepresentations and purchase Products which were recalled because of *L. monocytogenes* contamination.

76.    Plaintiffs and Class members had no knowledge of the falsity of Defendant's representations and reasonably believed them to be true. In justified reliance on Defendant's misrepresentations, Plaintiffs and Class members purchased and consumed the Products containing *L. monocytogenes* or provided them to family members for consumption.

77.    As a direct and proximate consequence, Plaintiffs and Class members suffered harm. Among other things, they would not have purchased Defendant's Products, or they would have paid less had they known of the presence, or the potential presence, of *L. monocytogenes*.

78.    Plaintiffs and Class members are therefore entitled to damages and relief, as prayed for hereunder.

**THIRD CAUSE OF ACTION**
**Breach of Express Warranty**
**(On Behalf of Nationwide Class)**

79.    Plaintiffs hereby incorporate all other paragraphs of this Complaint and restate them as if fully set forth herein.

80.    Plaintiffs bring this claim individually and on behalf of the members of the proposed Class against Defendant for breach of express warranty.

81.    Defendant marketed and sold the Products into the stream of commerce with the intent that the Products would be purchased by Plaintiffs and members of the Class.

82.    Defendant expressly warranted, advertised, and represented to Plaintiffs and

members of the Class that the Products were and are high quality, healthy, safe, and suitable for human consumption.

83.     Defendants made these express warranties regarding the Products' quality, ingredients, and suitability for human consumption in writing through its website, advertisements, and marketing materials and on the Products' packaging and labels. These express warranties became part of the basis of the bargain that Plaintiffs and members of the Class entered into upon purchasing the Products.

84.     Defendant's warranties, advertisements, and representations were made in connection with the sale of the Products to Plaintiff and members of the Class. Plaintiffs and members of the Class relied on Defendant's warranties, advertisements, and representations regarding the Products in deciding whether or not to purchase Defendant's Products.

85.     Defendant's Products do not conform to Defendant's warranties, advertisements, and representations in that they are not safe or appropriate for consumption, as they were recalled due to *L. monocytogenes* contamination

86.     Defendant should have discovered the contamination through its own testing and expertise, and/or based on testing conducting by various third parties as alleged herein that would have revealed the Products as contaminated with *L. monocytogenes*.

87.     Privity exists because Defendant expressly warranted to Plaintiffs and members of the Class through the warranting, packaging, advertising, marketing, and labeling that the Products were high quality, healthy, safe, and suitable for human consumption, and by failing to make any mention of dangerous levels of *L. monocytogenes* contamination.

88.     As a direct and proximate result of Defendant's conduct, Plaintiff and members of the Class suffered actual damages in that they purchased Products that were worth less than the

price they paid, and they would not have purchased the Products had they known of the risk and/or presence of dangerous levels of *L. monocytogenes* contamination that do not conform to the Products' marketing and advertisements.

89.    Plaintiffs and members of the Class seek actual damages, injunctive and declaratory relief, attorneys' fees, costs, and any other just and proper relief available under the law.

**FOURTH CAUSE OF ACTION**
**Breach of Implied Warranty of Merchantability**
**(On Behalf of Nationwide Class)**

90.    Plaintiffs hereby incorporate all other paragraphs of this Complaint and restate them as if fully set forth herein.

91.    Plaintiffs bring this claim individually and on behalf of the members of the proposed Class against Defendant.

92.    At all relevant times, Defendant was the merchant, manufacturer, marketer, warrantor, and/or seller of the Products. Defendant knew or had reason to know of the specific use for which the Products were purchased.

93.    Plaintiffs purchased the Products manufactured and marketed by Defendant at retailers and online retailers for retail sale to consumers throughout the United States.

94.    Products are and were at all relevant times goods within the meaning of various state statutes set forth herein.

95.    An implied warranty that the Products were merchantable arose by operation of law as part of the sale of the Products.

96.    Defendant impliedly warranted to Plaintiffs and the Class that the Products were of merchantable quality, fit for their ordinary use, and conformed to the messaging, characterizations, promises, and affirmations of fact made on the Products' packaging, labels and/or advertisements,

including that the food was high quality, healthy, safe, and suitable for human consumption. The Products when sold at all times were not in merchantable condition and were and are not fit for the ordinary purpose of providing safe and nutritious food. The Products were and are not safe for consumption because they were recalled due to *L. monocytogenes* contamination.

97.    Plaintiffs and members of the Class relied on such messaging, characterizations, promises, and affirmations of fact when they purchased the Products. Contrary to Defendant's representations and warranties, the Products were not fit for their ordinary use – human consumption- and did not conform to Defendant's affirmations of fact and promises as they contained, or were at risk of containing, dangerous levels of *L. monocytogenes* contamination that do not conform to the packaging.

98.    As a consequence, Defendant breached its implied warranties upon selling such Products, as each product was recalled due to possible contamination with *L. monocytogenes*.

99.    Defendant cannot disclaim its implied warranty as it knowingly sold unsafe and hazardous Products.

100.    Defendant was on notice of this breach, as Defendant was aware or should have been aware of the *L. monocytogenes* contamination in the Products due to its own testing and expertise, and/or based on testing conducted by various third parties as alleged herein that revealed the Products as contaminated with *L. monocytogenes*.

101.    As a direct and proximate result of Defendant's breach of the implied warranty of merchantability, Plaintiffs and members of the Class have been damaged in an amount to be proven at trial.

102.    Plaintiffs and members of the Class have been excused from performance of any warranty obligations as a result of Defendant's conduct described herein.

20

103.    Privity exists because Defendant impliedly warranted to Plaintiff and members of the Class through the warranting, packaging, advertising, marketing, and labeling that the Products were high quality, healthy, safe, and suitable for human consumption, and by failing to make any mention of *L. monocytogenes* contamination.

104.    Nonetheless, privity is not required here because Plaintiffs and each Class member are intended third-party beneficiaries of contracts between Defendant and its distributors and buyers, and of their implied warranties. The distributors and buyers were not intended to be the ultimate consumers of the Products and have no rights under the warranties of the Products; the warranties were designed for and intended to benefit consumers only.

105.    As a direct and proximate result of Defendant's conduct, Plaintiffs and members of the Class have suffered actual damages in that they have purchased Products that are worth less than the price they paid and that they would not have purchased at all had they known of the *L. monocytogenes* contamination.

106.    Plaintiffs and members of the Class seek actual damages, injunctive and declaratory relief, attorneys' fees, costs, and any other just and proper relief available under the law.

## FIFTH CAUSE OF ACTION
### Fraudulent Concealment - Fraud by Omission
### (On Behalf of Nationwide Class)

107.    Plaintiffs hereby incorporate all other paragraphs of this Complaint and restate them as if fully set forth herein.

108.    Plaintiffs bring this claim individually and on behalf of the members of the proposed Class against Defendant for fraud by omission.

109.    Defendant concealed from and failed to disclose to Plaintiffs and members of the Class that the Products were contaminated with *L. monocytogenes* and do not conform to the

Products' labels, packaging, advertising, and statements, including, but not limited to, representations that they were high quality, healthy, safe, and suitable for human consumption.

110.    Defendant was under a duty to disclose to Plaintiffs and members of the Class the true quality, characteristics, ingredients and suitability of the Products because: (1) Defendant was in a superior position to know the true state of facts about its products; (2) Defendant was in a superior position to know the actual ingredients, characteristics, and suitability of the Products for consumption; (3) Defendant had exclusive knowledge of its own test results showing *L. monocytogenes* contamination in its Products; and/or (4) Defendant knew that Plaintiffs and members of the Class could not reasonably have been expected to learn or discover that the Products were misrepresented in the packaging, labels, advertising, and websites prior to purchasing the Products.

111.    The facts concealed or not disclosed by Defendant to Plaintiffs and members of the Class are material in that a reasonable consumer would have considered them important when deciding whether to purchase the Products. No reasonable consumer would have purchased Products had Defendant adequately and fully disclosed the truth.

112.    Defendant knew that this omission was material information that Plaintiffs and members of the Class required, and Defendant intentionally omitted and failed to disclose this information to induce the Plaintiffs and members of the Class to purchase its Products.

113.    Plaintiffs and members of the Class did not know or suspect that Defendant's Products were unsafe or contained unhealthy ingredients.

114.    Plaintiffs and members of the Class justifiably relied on Defendant's omissions to their detriment. The detriment is evident from the true quality, characteristics, and ingredients of the Products, which are inferior when compared to how the Products are advertised and represented

by Defendant.

115.    As a direct and proximate result of Defendant's conduct, Plaintiffs and members of the Class have suffered actual damages in that they purchased the Products that were worth less than the price they paid and that they would not have purchased at all had they known of the risk and/or presence of *L. monocytogenes* contamination that do not conform to the products' labels, packaging, advertising, and statements.

116.    Plaintiffs and members of the Class seek actual and punitive damages, injunctive and declaratory relief, attorneys' fees, costs, and any other just and proper relief available under the law.

**SIXTH CAUSE OF ACTION**
**Unjust Enrichment**
**(On Behalf of Nationwide Class)**

117.    Plaintiffs hereby incorporate all other paragraphs of this Complaint and restate them as if fully set forth herein.

118.    Plaintiffs and members of the Class conferred a benefit upon Defendant. Plaintiffs and members of the Class paid money for Defendant's Products which were not as represented; they were not suitable for human consumption, they did not provide targeted nutrition for humans as represented, and/or they did not meet Defendant's guarantees promising taste and nutrition. Defendant has unjustly retained the benefits conferred upon it by Plaintiffs and Class members.

119.    The circumstances as alleged herein make it inequitable for Defendant to retain such benefit. Specifically, Defendant retained that benefit even though its Products contain or may contain *L. monocytogenes* which renders the Products unsafe and unsuitable for human consumption. If Plaintiffs and Class members had known the true nature of the Products, they would not have paid money for them or would have paid less.

23

120.    Plaintiffs and Class members are therefore entitled to disgorgement and/or restitution as prayed for hereunder.

## SEVENTH CAUSE OF ACTION
### Violation of Kentucky Consumer Protection Act
### Ky. Rev. Stat. Ann. §§ 367.110, *et seq.*
### (On Behalf of Kentucky Subclass)

121.    Plaintiffs hereby incorporate all other paragraphs of this Complaint and restate them as if fully set forth herein.

122.    Defendant's business practices as complained of herein violate the Kentucky Consumer Protection Act, Ky. Rev. Stat. Ann. §§ 367.110, *et seq*. ("KCPA").

123.    Defendant's actions and practices constitute "unfair" business practices in violation of the KCPA, because, among other things, they are immoral, unethical, oppressive, unconscionable, unscrupulous or substantially injurious to consumers, and/or any utility of such practices is outweighed by the harm caused by consumers.

124.    Defendant's actions and practices constitute fraudulent business practices in violation of the KCPA because, among other things, Defendant's misrepresentations were likely to deceive reasonable consumers. Among other things, Defendant made affirmative misrepresentations regarding the Products. Specifically, Defendant represented that the Products were suitable for human consumption, represented that the Products provided targeted nutrition, and guaranteed the products for taste and nutrition. Defendant, however, failed to disclose material facts, namely, that (1) the Products contained, or might contain, *L. monocytogenes* resulting in injury to humans; and (2) Defendant failed to properly inspect and test Products for toxins and contaminants. Defendant had a duty to disclose these material facts because the Products were unsafe and because Defendant made affirmative representations about the Products. If Plaintiffs had known that the Products either (1) contained *L. monocytogenes* contaminants, or (2) that

Defendant failed to properly inspect and test for toxins and contaminants adequately, Plaintiffs would not have purchased the Products.

125.    As a result of Defendant's wrongful business practices, Plaintiff Melinda Thompson and the Kentucky Subclass lost money and have suffered injury-in-fact.

126.    Defendant's wrongful business practices present an ongoing and continuing threat and should be enjoined.

127.    Plaintiff Melinda Thompson and the Kentucky Subclass seek an order enjoining Defendant's unfair or deceptive acts or practices, equitable relief, and any other just and proper relief available. The claims for equitable relief are brought in the alternative should Plaintiffs not have an adequate remedy at law.

128.    Accordingly, Plaintiff Melinda Thompson and members of the Kentucky Subclass are entitled to judgment and equitable relief.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, on behalf of themselves and the proposed Class, pray for relief and judgment against Defendant as follows:

A.    Certifying the Class pursuant to Rule 23 of the Federal Rules of Civil Procedure, appointing Plaintiffs as a representative of the Class, and designating Plaintiffs' counsel as Class Counsel;

B.    Awarding Plaintiffs and the Class compensatory damages, in an amount exceeding $5,000,000.00, as to be determined by proof;

C.    Awarding Plaintiffs and the Class appropriate relief, including actual damages as well as statutory damages, where allowable;

D.    For declaratory and equitable relief, including restitution and disgorgement;

E.    For an order enjoining Defendants from continuing to engage in the wrongful acts and practices alleged herein;

F.    Awarding Plaintiffs and the Class the costs of prosecuting this action, including expert witness fees;

25

G.    Awarding Plaintiffs and the Class reasonable attorneys' fees and costs as allowable by law;

H.    Awarding pre-judgment and post-judgment interest; and

I.    Granting any other relief as this Court may deem just and proper

### JURY TRIAL DEMANDED

Plaintiffs hereby demand a trial by jury on all issues so triable.

Dated: August 4, 2025

**SARA WREN AND MELISSA THOMPSON** on behalf of themselves and all others similarly situated,

*s/Bart Dalton*
Bart Dalton (TX Bar Number: 24043418)
**BROZYNSKI & DALTON PC**
5700 Tennyson Parkway, Suite 300
Plano, Texas 75024
Tel: +1 (972) 371-0679
bart@bdlegalgroup.com

Randall K. Pulliam (*pro hac vice* application forthcoming)
Samuel R. Jackson (*pro hac vice* application forthcoming)
**CARNEY BATES & PULLIAM, PLLC**
One Allied Drive, Suite 1400
Little Rock, Arkansas 72202
Tel: 501-312-8500
Fax: 501-312-8505
rpulliam@cbplaw.com
sjackson@cbplaw.com